CHASEZ, Judge
(dissenting).
The District Court of the Parish of St. Charles rendered a judgment herein on March 21, 1967 instructing the Trustees of the St. Charles Land Trust that the interest of decedent, Mrs. Ella E. Watkins, in the Trust is immovable property under the law of Louisiana, transferrable only pursuant to Louisiana Succession proceedings and is subject to Louisiana Inheritance Taxes. The decedent was domiciled in the State of California; the Trust herein involved and the immovable corpus of the Trust is in the State of Louisiana.
From the judgment against the Trustees of the St. Charles Land Trust and in favor of the Inheritance Tax Collector for the Parish of St. Charles, State of Louisiana, the Trustees have appealed.
I am in accord with the judgment rendered against said appellants and therefore *132 dissent from the conclusions of my colleagues set forth in the main and concurring opinions filed herein.
The issues set forth in the main and concurring opinions are substantially correct. However it should be stated that the pleadings filed in this matter and the documents attached thereto, including the Trust agreement itself, reveal that while the former stockholders of the St. Charles Land Company desired to create a Trust and although they each, through their agent, caused the interest they owned in the property they received from the completely liquidated corporation to be transferred to the Trustees for the purpose set forth in the Trust agreement, an analysis of that document shows that it is essentially an agency and partnership agreement whereby former stockholders of the liquidated corporation transferred their property to designated trustees for administration purposes only, with the Trustees being paid for their services. The trustees designated do not have the power of alienation of any part of the property transferred to them without the consent of 75% of the owners who transferred it to them; likewise they are unable to invest any funds accruing to the trust except to the extent of purchasing Government Bonds, at interest, to be held by them until it is necessary to remit the quarter-annual distribution of net revenues to the beneficiary certificate holders or to pay taxes or other obligations that are due.
The agreement reveals that the Trustees are dominated and controlled by the owners in all important matters pertaining to the Trust. The Trust agreement itself states:
“g- Restrictions on Powers. The sole purpose of this trust is to conserve and protect the trust estate and to collect and distribute the income and proceeds therefrom to the beneficiaries after the payment of, or provision for, expenses and liabilities. The trustees shall not at any time, on behalf of the trust or the beneficiaries, enter into or engage in any business, including without limitation, the exploration, development or operations of any mineral property, wherever located. This limitation shall apply irrespective of whether the conduct of any such business activities is deemed by the trustees to be necessary or proper for the conservation and protection of the trust estate. The trustees shall not invest any of the funds held in the trust estate, except that the trustees may deposit money held under this agreement in an interest-bearing account or accounts or in a checking account or accounts, and the trustees may purchase obligations of the United States. The trustees shall be restricted to the holding and collection of the trust moneys and the payment and distribution thereof for the purposes set forth in this agreement and to the conservation and protection of the trust estate and the administration thereof in accordance with the provisions of this agreement. The trustees shall not acquire any new properties of any kind. Every provision in this agreement, including the provisions of paragraph f of this article 2, shall be construed in a way that is consistent with the purpose and with the limitations on the trustees set forth in this paragraph g, and no power granted by paragraph f of this article 2 or any other provision of this agreement shall be exercised in a manner which goes beyond the purpose and the limitations of this paragraph g.”
Thus it is fair to state that the only thing the Trustees can do with funds that come into their possession as administrators of the property transferred to them by the owners thereof is to distribute same in accordance with the proportionate interest each owner has therein, as set forth in certain certificates of interest issued to said former stockholders of the liquidated corporation, in accordance with the terms of the agreement.
Attached to the trust agreement is a description of all of the assets transferred. A casual glance at this description indicates that all the property so transferred consists of mineral interests and servitudes on lands *133 located in the Parish of St. Charles, Louisiana.
Revised Statutes 9:1105 reads as follows:
“Oil, gas, and other mineral leases, and contracts applying to and affecting these leases or the right to reduce oil, gas, or other minerals to possession, together with the rights, privileges, and obligations resulting therefrom, are classified as real rights and incorporeal immovable property. They may be asserted, protected, and defended in the same manner as may be the ownership or possession of other immovable property by the holder of these rights, without'the concurrence, joinder, or consent of the landowner, and without impairment of rights of warranty, in any action or by any procedure available to the owner of immovable property or land. This Section shall be considered as substantive as well as procedural so that the owners of oil, gas and other mineral leases and contracts within the purpose of this Section shall have the benefit of all laws relating to the owners of real rights in immovable property or real estate. As amended Acts 1950, 2nd Ex.Sess., No. 6, § 1.”
Article 3664 of the Code of Civil Procedure of the State of Louisiana provides as follows:
“ ‘A mineral lessee or sublessee, owner of a mineral interest in immovable property, owner of a mineral royalty, or of any right under or obligation resulting from a contract to reduce oil, gas, and other minerals to possession, is the owner of a real right. These rights may be asserted, protected, and defended in the same manner as the ownership or possession of immovable property, and without the concurrence, joinder, or consent of the owner of the land.’ ”
It is therefore clear that all property transferred by the former stockholders of the St. Charles Land Company is immovable property under our law.
The majority opinion herein, notwithstanding the foregoing, contends that the beneficial interest in 527 units in the trust estate of the trust owned by Mrs. Watkins at the time of her death, is movable property, and directs attention to the fact that Article 3(b) of the trust instrument provides expressly that “the interests of the beneficiaries are classified as movable property, notwithstanding that the trust estate consists in whole or in part of immovable property the opinion further states that there is no law that makes a beneficial interest in a trust an immovable.
It appears to the writer hereof that as the corpus of the trust is immovable property, the mere statement in any agreement between the parties that immovable property becomes and is classified as movable proper-' ty does not in fact change the nature of the property. As hereinabove stated our law defines mineral rights attached to lands in this State, wherever located, to be immovable property, i. e., incorporeal immovables, and the laws of this State governing immovable property apply thereto.
The majority herein contends that the beneficiary certificates of interest held by the owners of the property transferred to the trust (all being former shareholders of the liquidated St. Charles Land Company) are likened to and should be treated in the same manner as shares of stock in a corporation and should be accorded the same recognition here as exists in succession proceedings, i. e., the owner of a share of stock having an interest in the assets of the corporation but not in the realty owned by it, to the extent of his holdings. A shareholder in the corporation becomes the owner of corporate stock only if he has paid the price therefor or given other consideration for same, in accordance with the law of the State. The trustees of the trust herein discussed cannot liken the certificates issued tO' the parties participating in the trust to shares of stock of a corporation for the sound reason that the trustees did not pay one dime for the property transferred to' them, and did not or could not sell these cer *134 tificates to the beneficiaries. As a matter of fact, when the St. Charles Land Company was liquidated, all of its assets and properties became the property of its then stockholders and it is that property which was specifically transferred and deposited with the Trustees. The purpose of the transfer was to have it administered for account of the owners, and the issuance of the so-called beneficiary certificates to the owners only indicated the extent of their interest in the property transferred and might, under some legal circumstances, be considered as counter letters; and this procedure can in no manner change the status of the property from immovable to movable.
The Constitution of Louisiana provides that inheritance taxes shall be due the State upon the transmission of the property of a decedent when he resides therein, and upon the transmission of property of a foreign decedent when he owns or has an interest in immovable property, within the State. The trust discussed herein is registered in the Parish of St. Charles, Louisiana in accordance with provisions of Section 2092 of the Louisiana Trust Code which reads as follows :
“If at any time the trust property of either an inter vivos trust or a testamentary trust includes immovables or other property the title to which must be recorded in order to affect third parties, a trustee shall file the trust instrument for record in each parish in which the property is located.”
The Court a qua, in its opinion, made the following comment:
“This Court feels that the trustees regarded the beneficial interest as an immovable and subject to probate in this state and subject to the inheritance tax, because Article 3(b) of the trust reads in part: provided that the trustees shall have the right, but shall not be bound, to require, as a condition precedent to recognition of the validity or effectiveness of any transfer of the interest of a beneficiary, compliance in respect thereof with the formalities attendant on like transfers of immovable property.’ ”
It should also be stated that while parties might be required to honor agreements which they mutually make, they should not be permitted to successfully urge them as a legal defense affecting the rights of third parties, or, as in this case, to avoid the payment of taxes that may be due the State.
I am constrained to conclude that the property involved in this proceeding and the beneficiary interest represented by the certificate issued by the trustees to the decedent is immovable property located in the State of Louisiana, and the State of Louisiana is entitled to demand and to be paid an inheritance tax on the transmission of that property to decedent’s heirs. Therefore judgment should be entered instructing the Trustees of St. Charles Land Trust as follows :
1. The beneficial interest sought to be transferred is an incorporeal immovable; and, as such,
2. Under C.C.P. Art. 3401 an ancillary probate of the estate of the decedent must be instituted in the Parish of St. Charles, State of Louisiana, and any judgment and any transfer relative to the beneficial interest must be recorded in the conveyance records of said parish; and,
3. The beneficial interest under the trust is subject to the Louisiana Inheritance Tax laws.
All costs shall be borne by the appellants.
CHASEZ, J., is of opinion a rehearing should be granted.